UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| KAREN ABRAUGH PERSONALLY as the ADMINISTRATOR OF THE ESTATE OF RANDALL ABRAUGH, deceased<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>BILL ALTIMUS, ADMINISTRATOR OF BOSSIER PARISH GOVERNMENT; JAMES COCHRAN, PRESIDENT OF BOSSIER PARISH POLICE JURY; JULIAN C. WHITTINGTON, SHERIFF, BOSSIER PARISH SHERIFF'S OFFICE; RODNEY BOYER, WARDEN, BOSSIER PARISH MAXIMUM-SECURITY FACILITY; SUSAN C. TUCKER, PhD.; CYNTHIA HOLLEY, RN; ANITA FLYE, PhD.; RUSSELL W. ROBERTS, MD; JESSICA FARRINGTON, RN; BOSSIER SUPERVISORS OF LOUISIANA STATE UNIVERSITY AGRICULTURAL AND MECHANICAL COLLEGE; STATE OF LOUISIANA OFFICE OF RISK MANAGEMENT; SERGEANT BRADLEY VASSAR, SHIFT SERGEANT; JOHN DOE, CORRECTIONAL EMPLOYEE; JOHN DOE, MD; and JOHN DOE, MENTAL HEALTH PROFESSIONAL<br><br>　　　　　Defendants. | :Civil Action No.:<br>:<br>:District Judge:<br>:Magistrate Judge:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

1

Comes the Plaintiff, by and through her attorneys, STROUD, CARMOUCHE & BUCKLE, PLLC, and JAMES & CARTER, PLC, and for her complaint against the Defendants, hereby states:

## I.

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367(a). Simultaneously with the action, Plaintiff has filed a Complaint with the Medical Review Panel of medical negligence claims pursuant to LSA-R.S. §40:1299-39 et seq. This Court has supplemental jurisdiction of these state law claims pursuant to 28 U.S.C. § 1367(a) because the claims are inextricably intertwined with the 42 U.S.C. 1983 claim and form part of the same case or controversy as the 42 U.S.C. § 1983 claim. Plaintiff requests a stay of this lawsuit pending a decision of the Medical Review Panel.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the acts complained of all occurred in Bossier Parish, Louisiana such parish being situated in the Western District of Louisiana Shreveport Division.

## II.

## PARTIES

3. The Decedent is Randall Layne Abraugh (hereinafter "Abraugh") who died on March 4, 2019 at age 26, in Bossier City, Bossier Parish, Louisiana. On the day of his death, Randall Abraugh was domiciled in Ashley County, Arkansas.

4. Plaintiff, Karen Abraugh, is an adult, who lives in Wilmot, Arkansas. Karen Abraugh is the biological mother of the decedent, Randall Layne Abraugh. On or about October

16, 2019, the Probate Court of the State of Arkansas, Ashley County, issued letters of Administration, appointing Karen Abraugh, Administrator of the Estate of Randall Layne Abraugh. Karen Abraugh also asserts a personal Louisiana wrongful death claim on behalf of herself and all survivors.

5. Defendant Bill Altimus, (hereinafter "Altimus") is the Administrator of the Bossier Parish Government. At all times relevant mentioned herein, an adult citizen of the United States and a resident of Louisiana. Defendant Parish Government is an entity of the state of Louisiana that at all times pertinent herein maintained contracts with Bossier Maximum-Security Facility (hereinafter "BPMS") for the performance of medical and mental health care and other medical administrative services for the detainees of the BPMS. Pursuant to LSA-R.S. §15-702 Altimus is responsible for the maintenance and implementation of the contracts. He is sued individually and in his official capacity.

6. Defendant James Cochran, President of Bossier Parish Police Jury (hereinafter "Cochran") pursuant to LSA-R.S. §15-702 is responsible for providing the funds and personnel necessary for the operation of the BPMS. At all times relevant mentioned herein, an adult citizen of the United States and a resident of Louisiana. The Bossier Parish Police Jury maintains contracts for medical and mental health services at the BPMS. Cochran is responsible for the implementation of the BPMS contracts and is sued individually and in his official capacity.

7. Defendant Julian C. Whittington (hereinafter "Whittington") is and was the Sheriff of Bossier Parish, and in that capacity, and pursuant to LSA-R.S. §15-704, is and was responsible for establishing or failing to establish the policies, practices, and regulations for the conduct of the BPMS. At all times relevant mentioned herein, an adult citizen of the United States and a resident of Louisiana. Whittington is and was responsible for the hiring, training, supervision, discipline,

and control of all members of the BPMS. Whittington is and was the commanding officer of the other police personnel named herein as individual defendants. Whittington is and was constitutionally and statutorily responsible also for the operation, practices, and totality of conditions of the BPMS. Whittington at all times herein, was acting in such capacity as the agent, servant, and employee of Bossier Parish. He is sued individually and in his official capacity. Whittington has a constitutional and statutory responsibility for the conditions of confinement and practices of the BPMS, and Whittington is responsible for maintaining the BPMS in conformity with constitutional requisites. Whittington is the custodian of the BPMS, by virtue of LSA-R.S. §15-704 and is responsible for the neglect and omission of the duties of all deputy sheriffs and jailers and charged with furnishing medical aid for all persons detained in the BPMS and assuring the reasonable safety of the inmates. In addition, Whittington is and was responsible for ensuring that the BPMS personnel obeyed regulations of the BPMS, and the laws, minimum jail standards and Constitution of the State of Louisiana and the United States. Whittington is and was responsible also for the establishment of policies, procedures, and guidelines for the arrest, jailing, and safekeeping of detainees housed in the BPMS.

8. Defendant Rodney Boyer, (hereinafter "Boyer"), is sued in individual capacity and in his official capacity as the Warden of BPMS. Defendant Boyer is, and at all times relevant mentioned herein, an adult citizen of the United States and a resident of Louisiana. Defendant Boyer was endowed with responsibility regarding the provision of security, health and medical services to persons in custody of BPMS and was charged with responsibility to ensure that all prisoners under this jurisdiction were protected and received timely and adequate medical and mental health treatment. Defendant Boyer is responsible for the policies, practices, and customs

of the BPMS, as well as the hiring, training, control, supervision, and discipline of its correction officers and other personnel.

9. Defendant Susan C. Tucker, (hereinafter "Tucker") is sued in her individual and official capacity as the mental health consultant for the BPMS. Defendant Tucker is and was at all relevant times mentioned herein a citizen of the United States and state of Louisiana. On information and belief all times pertinent hereto Defendant Tucker is a licensed psychologist under contract with the Bossier Parish Police Jury to be responsible for promulgating and implementing policy, practice and procedure for the screening and mental health treatment of for the detainees at the BPMS.

10. Defendant Cynthia Holley (hereinafter "Holley") is sued in her individual and official capacity as a registered nurse for the BPMS. Defendant Holley is and was at all relevant times herein a citizen of the United States and state of Louisiana. Defendant Holley is responsible for the medical and mental health screening, follow up treatment and referral of detainees of the BPMS to a physician or other mental health professional.

11. Defendant Jessica Farrington, RN (hereinafter Farrington) is sued in her individual and official capacities as the Director of Medical Services at the BPMS. At all times relevant to the facts alleged herein, Farrington is and was a citizen of the United States and state of Louisiana. Farrington was responsible for implementing policy, practice and procedure for the medical and mental health screening, referral and treatment of the BPMS detainees.

12. Defendant Anita Flye, PhD., (hereinafter "Flye"), is sued in her individual and official capacities as a psychologist for the Louisiana Department of Public Safety & Corrections. At all times relevant to the facts alleged herein, Flye is and was a citizen of the United States and state of Louisiana.

5

13.     Defendant Russell W. Roberts (hereinafter "Roberts"), is sued in his individual and official capacities as a physician for the Louisiana Department of Public Safety & Corrections, Bossier Parish Police Jury, Bossier Sheriff's Office, and/or Bossier Parish. At all times relevant to the facts alleged herein, Roberts is and was a citizen of the United States and state of Louisiana.

14.     Defendants Bossier Supervisors of Louisiana State University Agricultural and Mechanical College (hereinafter "University") is the entity under a contractual obligation to the Bossier Parish Police Jury to provide care for the medical treatment of the detainees of the BPMS.

15.     Defendant State of Louisiana Risk Management is an entity that provides an insurance policy for the University for the medical treatment of the BPMS detainees.

16.     Defendant John Doe is a medical and mental health provider responsible for the mental health and medical treatment of detainees.

17.     Defendant John Doe employee is a BPMS correctional employee whose duty it is to provide screening and referral for follow up mental health and medical treatment for the BPMS detainees and is sued in his/her individual and official capacity.

18.     Defendant John Doe, MD is a physician under contract pursuant to LSA-R.S. §15-703 to provide medical and mental care and implement policy for the care of BPMS detainees and is sued in his/her individual and official capacity.

19.     Defendant Sergeant Bradley Vassar, (hereinafter Vassar) is sued individually and in his official capacity as the Shift Sergeant responsible for protection of the BPMS detainees employed by Bossier Parish Sheriff's Department. Defendant Vassar is at all times relevant mentioned herein, an adult citizen of the United States and a resident of Louisiana.

20.     Defendant, Bossier Parish Police Jury (hereinafter "Police Jury") is a 12-member elected body that governs Bossier Parish, Louisiana.

21. Defendant Bossier Parish, Louisiana (hereinafter "Bossier) is a parish located in the northwestern part of the State of Louisiana.

## III.

## FACTUAL ALLEGATIONS

22. On February 28, 2019, at approximately 11:05 p.m., Plaintiff's decedent was booked into the BPMS. Plaintiff's decedent was medicated, intoxicated, confused, disoriented and removed from reality.

23. Plaintiff's decedent, was a pre-trial detainee who was both intoxicated, medicated and had a history of mental health treatment. He was identified by Defendant Holley as a detainee who should be followed for alcohol withdrawal syndrome and possible delirium tremens. He was then placed in an overcrowded, unobserved E-POD, E105 with convicted inmates without taking any precautions for the foregoing serious medical needs.

24. Defendant Holley did not investigate Plaintiff's decedent mental health history and did not notify the medical or mental health staff that Plaintiff's decedent was suspected for alcohol withdrawal syndrome or establish any detoxification plan for Plaintiff's decedent in regards to either alcohol or Xanax (benzodiazepine).

25. Protocols for monitoring the Plaintiff's decedent for alcohol withdrawal symptoms or delirium tremens were not implemented for Plaintiff's decedent.

26. Defendants' denied Plaintiff's decedent's family's effort to talk to Plaintiff's decedent.

27. The water system in Plaintiff's decedent's cell was inoperable, he was not provided liquids or medication nor was he monitored or observed, and his vital signs were not checked.

28. Shortly prior to his death, Plaintiff's decedent was observed by an inmate to be experiencing symptoms of alcohol withdrawals.

29. Plaintiff's decedent was either not referred to a physician or mental health professional, but was left in general population without screening, monitoring or medication alternatives, the physician and mental health professional were aware of the foregoing and disregarded the risks.

30. On March 1, 2019, at approximately 4:43 p.m., Plaintiff's decedent was found in his cell hanging from his bedsheets.

31. On March 1, 2019, at approximately 7:37 p.m., Plaintiff's decedent was treated at the Willis-Knighton Bossier Hospital for the injuries he sustained in E-POD, E-105 at the BPMS.

32. On March 4, 2019, at approximately 11:00 a.m., Plaintiff's decedent died as a result of the injuries he sustained as a result of the untreated symptoms of alcohol and benzodiazepine withdrawal and delirium tremens experienced.

FIRST CLAIM FOR RELIEF
CIVIL RIGHTS ACT OF 1964
42 U.S.C. § 1983 and 42 U.S.C. § 1988

33. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1 through 32 above, as if stated herein word for word.

34. The Defendants, individually and in concert, had knowledge of the following:

    (a) Plaintiff's decedent was a pre-trial misdemeanor detainee with no criminal record and was housed in E-POD, E-105 on February 28, 2019 which was not capable of observation. The inmates were housed without an adequate scheme of classification;

    (b) The BPMS had a nonexistent or ineffective policy or procedure for classification of inmates and pre-trial detainees;

(c) No security rounds were made in the BPMS, nor did the BPMS have an established policy, practice or procedure for maintaining and documenting security rounds;

(d) The BPMS was understaffed because it did not have the appropriate number of personnel on duty and in proper locations to protect the inmates, and the personnel had no established policy, practice or procedure of assigned post orders. The BPMS used inmates to supervise the inmates including but not limited to Plaintiff's decedent;

(e) Plaintiff's decedent did not receive his medication, or any alternative to his medication;

(f) On March 1, 2020 from approximately 12:00 a.m. until 4:43 p.m. decedent was housed in a cell, not capable of observation because of the lack of adequate staff, instead of the designated special housing cell which was capable of observation with actual knowledge that a crisis situation existed;

(g) The BPMS had no trained medical personnel on staff to monitor the condition of its mentally ill, disturbed, detoxification stricken and suicidal detainees and a nonexistent or ineffective policy for dealing with medical/psychiatric type detainees including detainees suffering from alcohol withdrawal, benzodiazepine withdrawal and delirium tremens. The Defendants failed to refer Plaintiff's decedent to a physician or mental health professional;

(h) The policy, practice and procedure for detoxification process for detainees housed in the BPMS was nonexistent or ineffective, and not written by a duly qualified physician;

(i) The employees of the BPMS knew of the substantial risk to the health and safety of Plaintiff's decedent and consciously disregarded the risk and warnings given to the employees;

(j) The BPMS was not being operated in compliance with the statutory minimum standards and violated their statutory duty to Plaintiff's decedent to make the jail a reasonably safe place of confinement;

(k) Defendants did not adopt or implement medical health policies and procedures that met applicable medical standards in correctional health;

(l) Defendants did not maintain proper medical records, and/or custody records, sufficient to provide medical and/or corrections personnel with complete information regarding an inmate's medical condition, so that informed decisions could be made regarding continuing care and custody;

(m) Defendants did not have a medical watch protocol;

(n) Defendants did not provide training to agents and employees working at Bossier Max regarding any medical watch protocol;

(o) Defendants did not have an alcohol withdrawal or benzodiazepine withdrawal protocol;

(p) Defendants did not provide training to agents and employees working at Bossier Max regarding any alcohol or benzodiazepine withdrawal protocol;

(q) During the relevant period of time, Bossier Max did not have a benzodiazepine withdrawal protocol;

(r) On or before February 28, 2019, Whittington, BSO, Police Jury, Bossier, and/or Bossier Max did not provide training to agents and employees working at Bossier Max regarding any benzodiazepine withdrawal protocol; and,

(s) Defendants did not have a policy, practice, or custom, or constructing and/or maintain holding cells that they were safe for the purpose to be used.

35. The foregoing acts and omissions by Defendants constitute a deliberate indifference to Plaintiff's decedent's safety and serious medical needs in violation of his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

SECOND CLAIM FOR RELIEF
Wrongful Death and Survival Actions
Action for Medical Injury
LSA R.S. §40:1231.1 et seq

36. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1 through 35 as if stated herein word for word.

37. Defendants on March 1. 2019 were medical care providers as contemplated by LSA-R.S. §40-1231.

38. The Defendant John Doe Insurance Companies provided medical malpractice coverage for the Defendants, its agents and its employees on March 1, 2019 and are directly liable for the negligent acts of the Defendants.

39. Defendants and their agents and employees individually and/or acting as employees and agents held themselves out to the public as skilled in the care, treatment and evaluation of patients and skilled in caring for people who are suffering from alcohol withdrawal and mental illness or who need medical attention or care and by reason thereof, the BPMS contacted, contracted with and/or referred to Defendants, its agents, employees and in-house and on-call psychiatrists for the care and treatment of its pre-trial detainees and inmates.

40. By virtue of said agreement, custom, practice and/or medical referral, the Defendants acting as employees and agents of did agree and undertake to carefully and skillfully attend Plaintiff's decedent and to render proper mental status examination, psychiatric care and treatment to Plaintiff's decedent on or about February 28, 2019 through March 1, 2019.

41. On February 28, 2019, the Defendants individually and/or acting as employees and agents for the benefit of Plaintiff's decedent, evaluated and attempted to diagnose Plaintiff's decedent. Plaintiff's decedent relied upon Defendants' diagnosis.

42. Between the hours of 11:00 p.m., on March 1, 2019, until the time of his death, Plaintiff's decedent continued to experience psychotic episodes and withdrawal symptoms.

43. While unattended without liquids, medication, monitoring or support, Plaintiff's decedent died in the BPMS while under the custody and control of the Defendant.

44. Plaintiff's decedent's death was a medical injury.

45. Plaintiff's decedent's resulting injury and subsequent death was caused in part by the Defendants individually and/or acting as employees and agents through its agents and employees, as a direct and proximate result of the individually and/or acting as employees and agents failure to exercise reasonable and ordinary care which a person would have expected the

11

Defendants individually and/or acting as employees and agents to provide to any individual under like circumstances in the following ways among others:

(a) Failed to properly diagnose Plaintiff's decedent's condition;

(b) Failure to give proper attention to Plaintiff's decedent when the Defendants knew or should have known that Plaintiff's decedent was suffering from psychosis, withdrawal and was disoriented in the BPMS environment;

(c) failure to contact a duly licensed physician to assume medical supervision of Plaintiff's decedent's condition;

(d) failure to establish a treatment plan;

(e) failure to have Mr. Abraugh transferred to an acute care facility for detoxification;

(f) failure to treat Mr. Abraugh in a manner consistent with the applicable standard of care;

(g) Failure to consider other appropriate alternatives to care for and protect an individual in Plaintiff's decedent's condition;

(h) Failure to exercise reasonable care to medically monitor and supervise Plaintiff's decedent;

(i) Failure to provide Plaintiff's decedent with proper medication and medical attention;

(j) Failure to establish and maintain effective intercommunication with a qualified psychiatrist to make a provision for the diagnosis and treatment of Plaintiff's decedent's medical problems;

(k) Failed to diagnose and/or properly treat alcohol and benzodiazepine withdrawal syndrome; and,

(l) Failed to follow established medical protocol regarding alcohol and benzodiazepine withdrawal.

46. The above actions constituted a breach of the standard of care for mental health care professionals of the degree of skill and learning ordinarily possessed by mental health care professionals in a similar locale.

47. As a direct and proximate cause of Defendants' actions, Abraugh suffered emotional and physical injury, physical pain and suffering, and ultimately, death.

**THIRD CLAIM FOR RELIEF**
**NEGLIGENCE**
**LOUISIANA STATE LAW**
**LOUISIANA CIVIL CODE ART 2315 et seq.**
**L.S.A. TITLE 22, PART III §2501 et seq.**
**and §2909 et seq.**

48. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1 through 47 above, as if stated herein word for word.

49. As a proximate and direct result of the carelessness, negligence and negligence per se of Defendants individually and/or acting as employees and agents Plaintiff's decedent sustained injuries resulting in his death.

50. The Defendants, to the extent covered by insurance, have waived sovereign immunity from a negligence cause of action.

51. The Defendants' actions constitute negligent and negligent per se acts that have proximately caused injury and death to Plaintiff's decedent.

52. Defendants are responsible for the operation of a jail with proper and necessary care for pretrial detainees pursuant to L.S.A. Title 22, Part III §2501 et seq. and §2909 et. seq.

53. The Defendants' failed to act to protect Plaintiff's decedent from bodily harm; failed to treat Plaintiff's decedent for his psychosis and alcohol withdrawal and failed to implement policy and procedures to protect detainees tremens; failed to implement policy and procedure regarding proper medical treatment for detainees and acted in a manner without the due care and diligence which a reasonable and prudent individual acting in a similar capacity would have displayed in assigning, housing and protecting the detainees in the BPMS; and, failed to treat detainees suffering from alcohol withdrawal and psychosis.

54. As a direct and proximate cause of Defendants' actions, Abraugh suffered emotional and physical injury, physical pain and suffering, and ultimately, death.

## FOURTH CLAIM FOR RELIEF
## VICARIOUS LIABILITY/RESPONDENT SUPERIOR
## LOUISIANA STATE LAW

55. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1 through 54 above, as if stated herein word for word.

56. Defendant employers may be held vicariously liable for the wrongful acts of their agents and employees.

57. As a direct and proximate cause of the Defendants' actions, Abraugh suffered emotional and physical injury, physical pain and suffering, and ultimately, death.

## FIFTH CLAIM FOR RELIEF
## INDEMINIFICATION
## LOUISIANA STATE LAW

58. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1 through 57 above, as if stated herein word for word.

59. Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages; for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

60. As a direct and proximate cause of the Defendants' aforementioned actions, Abraugh suffered emotional and physical injury, physical pain and suffering, and ultimately, death.

61. As such, Defendants are therefore obligated by Louisiana statute to pay any judgment entered against its employees.

## SIXTH CLAIM FOR RELIEF
## SURVIVAL
## LOUISIANA STATE LAW

62. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1 through 61 above, as if stated herein word for word.

63. As a direct and proximate cause of the Defendants' aforementioned actions, Abraugh suffered emotional and physical injury, physical pain and suffering, and ultimately, death.

64. Therefore, Abraugh's Estate is entitled to recover survival damages on his behalf as provided by Louisiana law.

### SEVENTH CLAIM FOR RELIEF
### WRONGFUL DEATH
### LOUISIANA STATE LAW

65. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1 through 64 above, as if stated herein word for word.

66. As a direct and proximate cause of the Defendants' aforementioned actions, Abraugh suffered emotional and physical injury, physical pain and suffering, and ultimately, death.

67. Abraugh is survived by his biological mother, Karen Abraugh; his biological father, Troy Layne Abraugh; his wife, Kelsey Rice Abraugh; and his biological siblings, Hannah Abraugh and Hillary Montgomery.

68. Karen Abraugh asserts this wrongful death action on behalf of Abraugh's survivors to recover wrongful death damages as provided by Louisiana law.

69. The Defendants' conduct in each of the foregoing respects constitutes negligence, gross negligence, and willful and wanton conduct, and the totality of its conduct evidences a malicious disregard for which malice may be inferred, rendering the Defendants liable for punitive damages.

70. As a direct and proximate result of the aforementioned negligence of the Defendants, Plaintiff's decedent received both temporary and fatal injuries in the BPMS and, as a consequence, his estate has sustained the following damages:

    (a) Conscious pain and suffering;

    (b) Disfigurement;

    (c) Mental anguish;

    (d) Medical and funeral expenses;

    (e) Property damages;

    (f) Economic damages; and,

    (g) Loss of life.

for all of which Plaintiff, as administrator of the Estate of Randall Layne Abraugh, claims damages in an amount which exceeds the amount necessary for federal diversity actions.

71. As a direct and proximate result of the aforementioned negligence of Defendants, Plaintiff's decedent's heirs, including his wife, father, mother, and sisters, suffered mental anguish occasioned by the traumatic and needless unexpected death of their husband, son, and brother, all of which has damaged them in an amount which exceeds the amount necessary for federal diversity action.

72. Plaintiff claims punitive damages against the Defendants in an amount sufficient to deter Defendants from similar conduct in the future.

73. Plaintiff demands a trial by jury.

74. Plaintiff reserves her right to amend this complaint.

WHEREFORE, Plaintiff respectfully prays that this Court enter a judgment granting a declaratory judgment that the Defendants' acts, policies, and practices complained of herein,

violated Plaintiff's decedent' rights secured by the due process clause of the Fifth and Fourteenth Amendments and the rights secured by the Eighth Amendment to the United States Constitution; the laws of the State of Louisiana, joint and several nominal, compensatory, and punitive damages by a jury on the causes of action set forth above against all the Defendants for Plaintiff and the Estate of Randall Layne Abraugh; a reasonable attorneys' 42 U.S.C. § 1988 fees; and, all other proper and just relief, whether specifically prayed for herein or not.

**Respectfully submitted,**

_____
Paul J. James, Esquire
AR Bar No.: 83091

Date: February 25, 2020

**JAMES & CARTER, PLC**
500 Broadway, Suite 400, Little Rock, Arkansas 72201
501-372-1414 / pjj@jamescarterlaw.com

(Lead Counsel)


s/A.M. "Marty" Stroud, III
A.M. "MARTY" STROUD, III, ESQUIRE
LA Bar No.: 12548

Date: February 25, 2020

**STROUD, CARMOUCHE & BUCKLE, PLLC**
7330 Fern Avenue, Suite 903, Shreveport, Louisiana 71105
Tel 318-629-0014 /marty@scb-law.com

(Local Counsel)